UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COUNCIL ON AMERICAN-ISLAMIC RELATIONS, MICHIGAN, a/k/a CAIR-MI, a Michigan nonprofit corporation, and RANEEN ALBAGHDADY, and Individual,

        Plaintiffs,

v.

JUDGE WILLIAM CALLAHAN, in his official capacity as 3rd Circuit Court Judge for the County of Wayne, Family Division, and WAYNE COUNTY, a unit of Local Government for the State of Michigan,

        Defendants.
_____/

CASE NO. 09-13372

HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING DEFENDANT WILLIAM CALLAHAN'S MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT**

Before the Court is Defendant William Callahan's Motion to Dismiss or Alternatively for Summary Judgment (Doc. No. 9). The Court heard oral argument on February 3, 2009. At the conclusion of the hearing, the Court took this matter under advisement. Upon further consideration, the Court **GRANTS** Defendant's Motion to Dismiss.

**I. INTRODUCTION**

The facts giving rise to Plaintiffs' Complaint occurred during a Wayne County Circuit Court hearing on a petition for a name change filed by Plaintiff Raneen Albaghdady. At the hearing, she was wearing a hijab, that is a head scarf worn by Muslim women to cover the head and neck, which Defendant asked her to remove. The

1

relevant exchange, set forth in the transcript, differs from the video recording of the hearing. Plaintiffs have supplied the comments omitted from the transcript, which are included in the brackets.

The Court: In the matter of a name change of Raneen Lamia Albaghdady, Case Number 09-104347-NC. Please – [Okay the head piece]

Ms. Albaghdady: I'm sorry.

The Court: No hats allowed in the courtroom.

(Unidentified Person in Audience): It's not a hat. It's a - - [scarf]

The Court: Excuse me, sir. No hats allowed in the courtroom.

Ms. Albaghdady: This one?

The Court: Yes.

Ms. Albaghdady: Okay. It doesn't matter.

The Court: Thank you. . . .

Def.'s Ex. 1, Tr. at p. 3.

Defendant subsequently took a recess to research a residency issue, and when the hearing resumed, Albaghdady stood at the podium without her head covering and made no comment. Judge Callahan denied her petition because it was filed before the residency requirement set forth in the governing statute had been satisfied.

Plaintiff, Council on American-Islamic Relations, Michigan (CAIR-MI), and Albaghdady filed suit, seeking a "declaration that the customary practice of . . .Callahan, in requiring Muslim women to remove their hijab violated" Albaghdady's "fundamental right to freely practice her religion" in violation of the First Amendment. Verified Complaint and Request for Declaratory Relief (hereinafter Compl.) at ¶ 3. Count I of the

2

Verified Complaint alleges interference with the First Amendment Free Exercise Clause. According to Albaghdady, she is "now fully eligible for a name change but fears an additional violation of her First Amendment rights if she appears before a judge in Wayne County, including Defendant Callahan." Id. at ¶ 19.  In Count II, Plaintiffs allege that the policy that required Albaghdady to remove her hijab "unlawfully burdens Muslim women with the choice of respecting their religious beliefs or participating in the Wayne County courts." Id. at ¶ 22.  Plaintiffs assert that this conduct violates the Equal Protection Clause because it "treats similarly-situated people differently because non-Muslim individuals are not forced to compromise their religious beliefs as a precondition" to participating in court. Id. at ¶ 23. In Count III, Plaintiffs allege that Callahan has obstructed Albaghdady from accessing the judicial system in violation of 42 U.S.C. § 1983. Id. at ¶¶ 26, 27.

In their prayer for relief, Plaintiffs ask for an order declaring the practice as unconstitutional because it deprived Albaghdady of her right to exercise her religion and prevented her from exercising her right to access the judicial system. Plaintiffs ask the Court to enjoin Callahan from taking similar actions against Albaghdady and others.

According to Defendant, this case should be dismissed for lack of jurisdiction, on procedural or discretionary grounds, and for failure to state a claim. The merits are discussed below.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a district court to dismiss a complaint that fails "to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6).  "This rule allows a defendant to test whether, as a matter of law, the plaintiff is

entitled to legal relief even if every allegation in the complaint is true." Tidik v. Ritsema, 938 F.Supp. 416, 421 (E.D. Mich. 1996).  Thus, when faced with a Rule 12(b)(6) motion to dismiss, a district court "must construe the complaint in the light most favorable to the plaintiff, [and] accept all factual allegations as true."  Allard v. Weitzman, 991 F.2d 1236, 1240 (6th Cir. 1993).

The procedural rules authorize a court to treat a Rule 12(b)(6) motion as one for summary judgment when "matters outside the pleadings are presented to and not excluded by the court."  FED. R. CIV. P. 12(d).  Here, the parties have submitted matters outside the pleadings and directed the Court to a video recording of the hearing found at http://www.youtube.com/watch?v+dGtivHX@_Rg: 024-0:25.  After the hearing, Defendant provided a videotape of the hearing, which the Court has reviewed in assessing the merits of the claim.  Therefore, the Court treats this motion as one for summary judgment.

Federal Rule of Civil Procedure 56(c) authorizes the Court to grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  There is no genuine issue of material fact if there is not a factual dispute that could affect the legal outcome on the issue.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether to grant summary judgment, this Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party."  Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 332 (6th Cir. 2008).

4

## III. ANALYSIS

### A. Availability of Injunctive Relief

Judges are entitled to absolute judicial immunity on claims for damages arising out of actions in their judicial capacity.  See Mireles v. Waco, 502 U.S. 9, 9-10 (1991) (per curiam) (judge performing judicial functions is absolutely immune from suit seeking monetary damages even if acting erroneously, corruptly or in excess of jurisdiction); Collyer v. Darling, 98 F.3d 211, 221 (6th Cir. 1996).  The parties disagree as to whether absolute immunity for judges has been extended to claims seeking injunctive relief.

Amendments to 42 U.S.C. § 1983 extended absolute immunity for state judicial personnel to requests for injunctive or equitable relief provided certain conditions are met.  The Federal Courts Improvement Act of 1996 bars injunctive relief in any § 1983 action "against a judicial officer for an act or omission taken in such officer's judicial capacity. . .unless a declaratory decree was violated or declaratory relief was unavailable." Federal Courts Improvement Act of 1996, § 309(c), Pub.L. No. 104-317, 110 Stat. 3847, 3853 (1996) (amending 42 U.S.C. § 1983); see also Kircher v. City of Ypsilanti, 458 F. Supp. 2d 439, 446-47 (E.D. Mich. 2006) (Rosen, J.).

Plaintiffs have not alleged that either of the prerequisites for injunctive relief was met. Nor have they alleged that the requested relief is premised on conduct by Callahan arising outside the performance of a judicial function.  Here, the challenged conduct involves controlling the demeanor and dress of parties while participating in matters before the bench, and the Court is satisfied that Defendant was acting in his judicial capacity.  Finally, the Court rejects Plaintiffs' assertion that Ex Parte Young, 209 U.S.

123 (1908), governs the outcome of this dispute. Plaintiffs' reliance on case law addressing the immunity of state officials, rather than judicial immunity, is misplaced.

Accordingly, the Court grants Defendant's motion to dismiss Plaintiffs' request for injunctive relief. Consequently, the sole remaining relief sought is a declaratory judgment.

### B. Standing

"Standing is the 'threshold question in every federal case." Grendell v. Ohio Supreme Court, 252 F.3d 828, 832 (6th Cir.2001) (quoting Coyne v. Am. Tobacco Co., 183 F.3d 488, 494 (6th Cir. 1999)). Plaintiffs, as the parties seeking to invoke federal jurisdiction, bear the burden of establishing standing. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103-04 (1998).

Article III of the United States Constitution "limits the federal judiciary's jurisdiction to "cases" or "controversies." See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 180-181 (2000). Accord Warshak v. U.S., 532 F.3d 521, 525 (6th Cir. 2008) (observing that Article III "does not extend the 'judicial power' to any legal question, wherever and however presented, but only to those legal questions presented in 'Cases' and Controversies' "). Further, in order to meet the case or controversy requirement of Article III of the Constitution, a plaintiff must have standing, that is "a sufficiently concrete and redressable interest in the dispute." Warshak, 532 F.3d at 525.

As set forth in the Verified Complaint, CAIR is a "national grassroots civil rights and advocacy group and America's largest Islamic civil rights organization, which exists to counsel, mediate and advocate on behalf of members, Muslims and others who have experienced religious discrimination." Compl. ¶ 2. Albaghdady is a member. Compl. ¶

7.  CAIR's standing to bring suit as an association on behalf of its members exists only "when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Friends of the Earth, 528 U.S. at 181.  Because Defendant moves for dismissal based on the first criterion--whether Albaghdady has standing to sue in her own right–the Court limits its discussion to that issue.

In order to meet standing requirements, Albaghdady must have (1) "suffered an injury in fact--an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) "the injury has to be fairly traceable to the challenged action of the defendant"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (quotations and citations omitted).  When considering the issue of standing In the context of a declaratory judgment action, "allegations of past injury alone are not sufficient."  Fieger v. Mich. Sup. Ct., 553 F.3d 955, 962 (6th Cir. 2009) (quoting Fieger v. Ferry, 471 F.3d 637, 643 (6th Cir.2006)).  "The plaintiff must allege and/or demonstrate actual present harm or a significant possibility of future harm."  Id.

Defendant asserts that Albaghdady has not and cannot establish an injury in fact as to her Free Exercise, Equal Protection Clause and Access to the Courts claims based on the record.  Callahan points to the lack of evidence that he knew of Albaghdady's religious beliefs or that her head covering had religious significance.  Further, Defendant maintains there is no evidence that he would have made her remove her head scarf had

he known.  Finally, Albaghdady never expressed concern over his order to removal it.  The Court agrees that the evidence, even viewed in the light most favorable to Plaintiffs, fails to establish standing.

Plaintiffs challenge Callahan's absence of knowledge through inference.  The videotape reveals that Callahan used the term "head piece" before he stated that hats were not allowed in the courtroom.  Plaintiffs maintain that his use of the term head piece suggests that he knew it was not a common hat.  Pls.' Resp. at 7. Plaintiffs also assert that Defendant's recognition was reflected in his "initial reluctance" to order its removal, as reflected by his first statement, "Okay, the head piece."  Id.  Moreover, an individual in the courtroom responded that Albaghdady's head piece, was "not a hat, it's a scarf."  Id. Plaintiffs contend that these facts, viewed in the light most favorable to Plaintiffs, create a genuine issue of material fact.  In addition to the videotape, Plaintiffs rely on common knowledge to attack Callahan's position that he lacked knowledge.  According to Plaintiffs, "Wayne County is home to the largest concentration of Arab-American Muslims outside of the Middle East," and Callahan has practiced in the Detroit area for twenty-two years, therefore he must be familiar with the hijab.  Id.

Had the Court not viewed the videotape, the inferences drawn by Plaintiffs to support their claims might have been reasonable.  These inferences cannot withstand the contemporaneous, unspun evidence of the events as they unfolded.  Here, Albaghdady never protested removal of her head piece, she never informed Defendant that her "hat" was a hijab, and most critically, when asked to remove it, said, "Okay.  It doesn't matter."  Def.'s Ex. 1, p. 3.  She removed her hijab without hesitation.  Her comment and conduct undermine her ability to meet Plaintiffs' burden to show an injury

in fact.

The Court's conclusion is not altered by Albaghdady's affidavit, in which she asserts that she acquiesced in the order to remove her "hat" because she was "terrified and scared of [Defendant]" because she came from a country "where you can't say no to a judge in a court room." Pl.'s Ex. A, Aff. at ¶ 3. She adds that she "felt if [she] did not follow his direction that [she] could be arrested." Id. Finally, Albaghdady asserts that any protest would have been "futile" inasmuch as her friend corrected Defendant at the hearing, noting it was a "scarf," not a hat. Id. at ¶ 4.

The affidavit, which addresses what Albaghdady was thinking during the hearing fails to derail an award of summary judgment. First and foremost, her demeanor in court does not comport with her assessment of her feelings, and her conduct in no way put Defendant on notice that her head piece bore religious significance. Although there is no dispute that Plaintiff's hijab complied with Muslim law; see Pls.' Ex. 1, Aff. of Walid, the videotape likewise reveals that it did not cover all of Albaghdady's hair, and it could have been mistaken for a fashion accessory.

The Court's assessment of the affidavit is based on the Sixth Circuit's admonition that past injury in and of itself is insufficient for standing. Because Albaghdady's assertions only address the existence of past harm,[1] they fail to meet Plaintiffs' burden to demonstrate present harm or the "significant possibility of future harm." Feiger, 553 F.3d at 962.

In sum, even if Plaintiffs' allegation of past harm are deemed sufficient, Plaintiffs

---

[1] Plaintiffs cannot establish a past injury relative to their claim that Albaghdady was denied access to the court. She proceeded, albeit unsuccessfully, with her name change petition.

cannot demonstrate that Albaghdady is significantly threatened by any realistic possibility of reoccurrence.  This is not a situation where a government actor required removal of a hijab after the wearer asserted her First Amendment rights.  There simply is no evidence that Callahan would have required the removal of a head covering if he had known of its religious significance.  Although an individual present in the courtroom stated it was a scarf, no one mentioned it was a hijab.  No one mentioned that removal would violate Albaghdady's religious beliefs.  Plaintiffs lacks standing given the facts and circumstances upon which Albaghdady bases her claims.  Because Plaintiffs lack standing, the Court dismisses this action in its entirety.

## IV.  CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion to **DISMISS** for lack of subject matter jurisdiction.

**IT IS SO ORDERED**.

s/Marianne O. Battani<br>
MARIANNE O. BATTANI<br>
UNITED STATES DISTRICT JUDGE

Dated: April 29, 2010

CERTIFICATE OF SERVICE

    Copies of this Order were served upon counsel of record on this date by electronic mailing and ordinary mail.

s/Bernadette M. Thebolt  
Case Manager
